## THOMPSON vs. SNOW & AL.

Where a vessel is let to the master on shares, he victualling and manning her, paying a portion of the port charges, employing her at his pleasure, and yielding to the owners, for her hire, a certain share of the net earnings; the liability of the general owners ceases, and the master is placed in their stead, during the time the vessel continues thus under his control.

Such transactions do not create a partnership between the owners and the master, in the business of the voyage.

THIS was an action of *assumpsit* against the defendants, who were owners of the brig *Milo,* for the price of a quantity of boards alleged to have been sold and delivered to them.

At the trial of this action, before *Smith J.* in the court below, the plaintiffs offered one *Hall*, the master of the brig, as a witness ; who testified that he took her " on shares ;" but without entering into any other contract, written or verbal, or having any conversation with either of the owners on that subject. He supposed, when he took the vessel " *on shares*," that he took her in the same manner as all other coasting vessels in that vicinity are hired, where they are taken on shares ; in which cases the master or hirer victuals and mans the vessel, pays a portion of the port charges, and yields to the owner, for her hire, a certain share of her net earnings. He said that he never knew a coasting vessel sailed in any other manner from *St. George's* river, to which this brig belonged, and in the vicinity of which all the parties resided. After he had been in the brig about two months, not being able to find freight, one of the defendants observed to him that " he must look out a cargo," or, " he had better look out for a cargo;" in consequence of which he proceeded to make purchases of lime and potatoes, and bought of the plaintiff the boards in question, for dunnage. In one instance he gave a note for some lime, but could not recollect whether in his own name, or for the owners. He told the plaintiff to charge the boards to the vessel and owners ; but did not expressly bind himself, nor consider himself liable to pay for them. After completing his cargo he proceeded to sea ; not informing either of the owners where or how he obtained the cargo, or what or how much he had on board, or whither he was bound ; nor did he receive instructions from either of the owners, respecting the vessel or cargo, except what might be inferred from his being told by *Brown*, one of the defendants, that he must do the best he could. *Snow*, at this time, was absent. *Brown* lived near the vessel, appointed *Hall* as master, acted and took the control of the vessel as owner, and was ship's husband. *Hall* hired the seamen. He proceeded to *Richmond*, in *Virginia*, where he sold his cargo, except the boards, which were lost by being swept from the quay. Thence he took freight to *New Bedford* ; thence to *North Carolina* ; thence to *Jamaica* ; and back to *North Carolina* ; where the vessel was stranded, and sold for the benefit of the owners.

During all this period he had no communication with the defendants respecting the employment of the vessel, nor any instructions from them. After selling his cargo at *Richmond*, he remitted part of the proceeds to his own correspondent at *Thomaston*, with instructions to pay over the money to several persons, of whom he had purchased lime and potatoes. Soon after his return home, *Snow* remarked to him in conversation, that *Thompson* had furnished the boards, and ought to have his pay. Before he sailed, he charged the boards, with the rest of the cargo, to the defendants ; and at the settlement of the voyage they did not particularly examine the books, nor was any account presented to them; but he stated to them what was due to them for earnings on the voyages, and they divided profit and loss, and received his notes for the amount. In making up this estimate of what was due to the owners, he charged the boards, and the rest of the cargo, and one half the port charges; and credited the proceeds of sales and freights; allowing them one half the difference for their part; and giving them at the same time a receipt or certificate stating that the accounts were settled, and his notes given to *Brown*, in full for the charter of the brig *Milo* for one year. The words ' in full of charter' he said were inserted by *Brown*, and he did not intend thereby to admit that he had chartered the vessel. He also testified that the plaintiff had been in the habit of selling and shipping lumber from *St. George's* river ; and he believed him to be a part owner in one or more vessels ; and that if there had been any loss in the cargo he supposed the defendants were to bear it.

The defendants objected to the competency of Capt. *Hall* as a witness for the plaintiff, on the ground of his interest, but the judge overruled the objection.

Upon this testimony the defendants contended that *Hall* had no authority to bind them ; he being himself the owner for the voyage, and the hiring not being such as to constitute a copartnership between them. But the judge instructed the jury that if they were satisfied that the defendants, at the time when the boards were procured, and during the voyage, continued to have the control of the vessel, and directed or assented to the purchase of

the boards, *Hall* acting merely in the capacity of master, and receiving half the net earnings for his wages, the plaintiff was entitled to recover. And if they should find that *Hall* and the defendants were jointly interested in the voyage and cargo, the boards having been procured on their joint account, and by their assent ; and that they were to share the profits and divide the loss ; this constituted them copartners in the transaction ; and the defendants were liable, though *Hall* was not joined in the suit. But if they believed, from the testimony, that the defendants chartered or hired their vessel to the master, for the voyage for which the boards were procured; that he was to pay for the charter one half the net earnings ; and to have the exclusive control and management of the vessel during the time ; this constituted the master the owner for that voyage, and he alone was liable for the cargo.

To these instructions, the verdict being for the plaintiff, the defendants filed exceptions, pursuant to the statute.

*Ruggles*, in support of the exceptions, contended that *Hall* was incompetent as a witness, by reason of his interest. If the plaintiff prevails, he is discharged from a direct liability to him for the amount of the boards, and the verdict will be evidence in his favor. At the same time he will not be liable to the defendants, having already accounted to them ; or if liable for any thing, it can extend only to his proportion of the debt, exclusive of costs and expenses. But if the plaintiff does not succeed, his remedy against the witness will extend not only to the value of the boards, but to all the costs and damages to which he may have exposed the plaintiff by falsely pretending to have authority to charge the defendants. He is therefore directly interested to support his agency. *Emerson v. Andrews* 4 *Mass*. 653. 1 *Phil. Ev*. 52, 55. *note. Peake's Ca*. 84. *Bland v. Ansley* 2 *New Rep*. 331. *Owen v. Mann* 2 *Day* 399. Wherever the verdict may be given in evidence for or against him, the witness is incompetent ; and the doctrine of the preponderancy of interest does not apply. *Peirce v. Butler* 14 *Mass*. 303, 312.

But if his testimony was admissible, it discloses such an absolute hiring of the vessel as constituted the master the owner *pro*

*has vice,* and rendered him alone responsible for every thing relating to the voyage. *Reynolds v. Toppan* 15 *Mass* 370. *Tuggard v Loring* 16 *Mass.* 336. And this testimony is corroborated by the evidence of the usage, which becomes a part of all contracts made in reference to it. *Williams & al. v. Gilman* 3 *Greenl.* 276.

*Allen,* for the plaintiff, insisted that the witness stood indifferent, his interest, if he had any, being equally balanced between the parties. And the evidence disclosed a case of partnership between the captain and owners, the profit and loss being equally divided, and the cargo having been purchased for their joint benefit. But if the captain was not a partner, there is evidence that he was the agent of the defendants, with authority to purchase a cargo on their account ; and the goods having been put on board for their benefit, a slight recognition of his authority is sufficient to charge them. This subject was fairly submitted to the jury, within whose province it belonged to determine.

WESTON J. at the ensuing term in *Kennebec,* delivered the opinion of the court.

The defendants, if liable in this action, must be charged upon one of three grounds. As owners of the vessel ; as copartners with the master, in the shipment and voyage ; or, as having specially authorized the master to purchase the boards, for the value of which this action is brought, on their credit. *Hall,* the master, testifies that he took the brig on shares ; that the terms were not the subject of express stipulation, either in writing or otherwise ; but that he expected to have her, according to the uniform usage of letting coasting vessels in *St. George's* river, from which he sailed, and in the vicinity ; by which the master is to victual and man the vessel, to pay a portion of the port charges, and to yield to the owners, for her hire, a certain share of her net earnings. The owners must have had the same understanding of the terms in this case ; as *Hall* further states that they settled with him, according to his views of the contract. It appears that *Hall* thereupon employed the vessel, at his pleasure,

Thompson *v.* Snow & al.

in several successive voyages, until she was finally stranded and sold, without communicating with the general owners upon the subject of her employment ; or receiving any instructions whatever from them. According to the cases of *Reynolds v. Toppan* 15 Mass. 370, and of *Taggard v. Loring* 16 *Mass.* 336, especially the last. *Hall* must be regarded as the owner of the brig, *pro hac vice*, and while she thus continued under his control, the liability of the general owners ceased, and was transferred to him. We refer to these cases for the reasoning from which this deduction is drawn. The same authorities show that, in transactions of this nature, the general owners and the party, who hires and employs a vessel upon these terms, are not to be deemed copartners ; for if they were, the defendants in both these cases must have been held liable, instead of being exonerated. That an agreement of this kind does not constitute a partnership, is further supported by the case of *Wilkinson v. Frasier* 4 *Esp.* 182, and of *Dreyer v. Sharpe* 5 *Taunt.* 74.

There is as little reason to charge the defendants upon any special authority given to *Hall*, to purchase a cargo upon their credit. The only evidence to this point, arises from the testimony of *Hall*, who says that he not being able to find freight, *Brown*, one of the defendants, observed to him that he, *Hall*, must look out for a cargo, or had better look out for a cargo. As the compensation to the owners, for the use of their vessel, was to depend on her employment, it was for their interest that she should not be delayed ; and this observation of *Brown* can be considered as nothing more than the intimation of a wish on his part that, if *Hall* could not procure a cargo on freight, he would obtain one by purchase. *Hall* further states that he proceeded to purchase a cargo ; but had no conversation with the defendants as to what he should buy, of whom, or where the vessel should go ; although *Brown*, one of the defendants, lived in his neighborhood. He adds, it is true, that he told the plaintiffs to charge the boards to the owners, and that he did not consider that he was liable for them himself ; but his directions or opinion can have no effect in determining the extent of his legal liability or theirs.

Upon this view of the evidence, it appears to us that the judge of the Common Pleas should have instructed the jury, as request-

ed by the counsel for the defendants, that the said *Hall* had no authority to bind them; that the facts proved did not constitute a copartnership ; and that the defendants were not liable in this action.

We have not deemed it necessary to consider the objection made to the competency of the witness ; being satisfied that his testimony is insufficient to charge the defendants.

The jury not having been in our opinion properly directed in this case, the exceptions are sustained, the verdict set aside, and a new trial ordered at the bar of this court.